John Michael HUGHES,
Plaintiff-Appellant,

v.

Robert RAINES et al.,
Defendants-Appellees.

No. 80–5420.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1981.

Decided April 6, 1981.

James L. Edgar, Phoenix, Ariz., for plaintiff-appellant.

William J. Schafer, III, Chief Counsel, Phoenix, Ariz., for defendants-appellees.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Before MERRILL and HUG, Circuit Judges, and EAST *, District Judge.

HUG, Circuit Judge:

We affirm the district court's denial of John Michael Hughes's petition for a writ of habeas corpus. Hughes was convicted of first degree attempted rape in an Arizona state court in November 1978. The conviction was affirmed by the Arizona Court of Appeals, and the Arizona Supreme Court denied review. Hughes then filed this habeas corpus petition asserting that his right to confrontation, guaranteed by the sixth and fourteenth amendments, was denied when the trial court granted a prosecution motion to preclude appellant from questioning the complaining witness regarding an attempted rape accusation she previously had made against another person.

## FACTS

The complaining witness, a 19-year-old girl, gave the following testimony concerning the event: Appellant Hughes picked her up as she was hitchhiking. He represented to her that he could assist her in obtaining a job at the wrecking yard where he was employed. He met her the following morning with the understanding that he would take her to see his employer. Instead, he drove to an isolated area in the foothills near Phoenix. Hughes told her to take off her clothes, and when she refused to do so, he pulled her out of the truck, ripping off her pants in the process. He threw her to the ground, tore off her underwear, and attempted to rape her. She kicked, struggled, and pleaded with him not to rape her and eventually dissuaded him. Her pants were so badly torn that she could not wear them, and he gave her his old blue shirt to wrap around her. He said he was sorry and drove away. She then walked to a house some distance away for help.

The occupant of the house testified that she was wearing an old blue shirt, that her hair was in disarray and contained burrs, dust and twigs, she had scratches and dirt on her arms and legs, and that she appeared to have been crying. The police recovered her torn pants at the scene where the incident occurred.

At the time of his arrest, Hughes denied ever having seen the complaining witness before and claimed he had been at work all morning. He testified at trial, however, that he had picked her up hitchhiking that day and that she had asked him to drop her off near the residence of some friends. He then stated that when they got into the foothills, she proposed that they have sexual relations for a price, and he refused. He then pulled her out of the truck and drove off. He explained that his shirt had been lying on the seat and that she must have grabbed it when he removed her from the truck.

## DISCUSSION

■ The right to confront witnesses, guaranteed by the sixth and fourteenth amendments, includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias or self-interest in testifying. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1973). This right is not unlimited, however. The trial judge has wide discretion in limiting the scope and extent of cross-examination. *Chipman v. Mercer*, 628 F.2d 528, 531 (9th Cir. 1980). The issue faced in this habeas corpus proceeding is whether the state trial judge so limited the cross-examination as to constitute a violation of the confrontation clause. As this court stated in *Chipman*,

> Although it tips the scales in favor of permitting cross-examination, the confrontation clause does not prevent the trial court from weighing the offer of proof to determine its probative value to the trier of fact and its probable effect on fair and efficient conduct of the trial.

*Id.* A violation of the confrontation clause could occur, however, even though the proposed area of inquiry burdens the efficient conduct of the trial, if the cross-examination could reasonably be expected to have a substantial effect on the decision of the jury.[1]

■ Thus, it is necessary to examine the probative effect of the proposed cross-examination. The defendant sought to demonstrate that the complaining witness had charged another man with attempted rape on another occasion and that the charge was false. First, any conclusions drawn from this fact that would bear on this case would depend upon whether it could be shown convincingly that the other charge was false. This is very doubtful. The offer of proof indicates that cross-examination would have revealed that Collins contended the prior charge was true, that the man involved denied attempting to rape her, and that the district attorney did not prosecute the charge. The fact that the district attorney chose not to prosecute, in itself, could mean no more than that he decided he did not have sufficient evidence to obtain a conviction.

1. Arizona has adopted the Federal Rules of Evidence. Rule 403 reads in part as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury . . . ." The trial judge, under this rule of evidence, was faced with the need to weigh the credibility and probative value of the offered proof (the likelihood that it would shake the well-corroborated testimony of the complaining witness) against the confusion of issues that was certain to result.

The constitutional inquiry is essentially the same, except that it must be recognized that there is an underlying minimum constitutional confrontation requirement that may not be abridged even for the best reasons of policy. Thus compliance with a rule of evidence will in most instances, but may not in every instance, avoid the constitutional challenge. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1973), for example, the state's strong policy behind the statutory confidentiality of juvenile records did not justify the exclusion of the juvenile record in face of the constitutional confrontation challenge. The possibility of a constitutional challenge to an evidentiary rule excluding evidence is recognized in the recently adopted Federal Rule of Evidence 412, which concerns exclusion of evidence of past sexual behavior of victims of rape. *See* Fed.R.Evid. 412(b)(1).

Even if the jury reasonably could conclude that the prior charge was false, the relevance of that conclusion to this case is slight. The inference the jury would be asked to draw is that because the complaining witness made a false accusation of attempted rape on a prior occasion, her accusation in this case was false. Our rules of evidence reflect a general reluctance to draw an inference that because a person may have acted wrongfully on one occasion, he or she also acted wrongfully on the occasion at issue. *See* Fed.R.Evid. 404(b). The fact that the two incidents were quite different further attenuates the inference to be drawn. The first incident occurred after a date, when she was in the man's apartment watching television and had consented to some physical contact. The issue was the extent of her consent. The man involved also contended that she had mischaracterized his actions because she was under the influence of liquor or drugs.

The instant case presents a very different situation. The girl accompanied the defendant on the basis of his representation that he could help her get a job. He drove her to an isolated location. Her testimony that she was there attacked by the defendant was well corroborated by the physical evidence—her torn clothing, the fact that she was wearing his shirt, the scratches and dirt on her arms and legs, and the fact that she was left in this condition in the foothills. The defendant's story, on the other hand, was contradictory and implausible. He at first denied that he had met her, and later contended that she had propositioned him, that he had refused, and that he had to pull her out of the vehicle.

Exploring the factual situation of the prior incident would have added extraneous issues that had little, if any, probative value. The limitation of the cross-examination was a reasonable exercise of discretion by the trial judge.

This case is readily distinguishable from *Chipman v. Mercer*. In *Chipman*, the limitation of cross-examination prevented the defendant from exploring a particular bias of the witness toward that defendant because he had lived at a residential care facility for the mentally ill in her neighborhood. There was a strong indication that the witness's identification of the defendant resulted from her preexisting bias toward him.

The Court in *Davis v. Alaska*, 415 U.S. at 316, 94 S.Ct. at 1110 noted a distinction between an attack on the general credibility of the witness and a more particular attack on credibility "effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." The Court stated that the purpose for revealing the juvenile record in that case was only "to probe (the witness) for bias and prejudice and not generally to call (his) good character into question." *Id.* at 311, 94 S.Ct. at 1107. Justice Stewart, in his concurring opinion, stated: "I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications." *Id.* at 321, 94 S.Ct. at 1112.

The object of the intended cross-examination in this case was not to establish bias against the defendant or for the prosecution; it merely would have been to attack the general credibility of the witness on the basis of an unrelated prior incident. We hold that the trial court's limitation of cross-examination on this issue did not rise to the level of a constitutional violation of petitioner's sixth and fourteenth amendment confrontation rights.

AFFIRMED.